UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THE ANNUITY, WELFARE AND
APPRENTICESHIP SKILL IMPROVEMENT
& SAFETY FUNDS OF THE INTERNATIONAL
UNION OF OPERATING ENGINEERS,
LOCAL 15, 15A, 15C & 15D, AFL-CIO, *by their
Trustees James T. Callahan, Thomas A. Callahan,
Michael Salgo, and William Tyson*, CENTRAL
PENSION FUND OF THE INTERNATIONAL
UNION OF OPERATING ENGINEERS,
*by its Chief Executive Officer Michael A.
Crabtree*, INTERNATIONAL UNION OF
OPERATING ENGINEERS NATIONAL
TRAINING FUND, *by its Chief Executive Officer
Jeffery Vincent*, and INTERNATIONAL UNION
OF OPERATING ENGINEERS LOCAL 15, 15A,
15C & 15D, AFL-CIO, *by its President &
Business Manager Thomas A. Callahan*,

    REPORT AND RECOMMENDATION
    20 CV 3743 (PKC) (LB)

    Plaintiffs,

-against-

GLASSMAR STEEL ERECTORS, INC.,

    Defendant.
------------------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

    James T. Callahan, Thomas A. Callahan, Michael Salgo, and William Tyson, as trustees of the Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of the International Union of Operating Engineers, Local 15, 15A, 15C & 15D, AFL-CIO ("Local 15 Trust Funds"), Michael A. Crabtree, as Chief Executive Officer of the Central Pension Fund of the International Union of Operating Engineers ("CPF"), Jeffery Vincent, as Chief Executive Officer of the International Union of Operating Engineers National Training Fund ("NTF"), and Thomas A. Callahan, as President and Business Manager of the International Union of Operating Engineers Local 15, 15A, 15C & 15D, AFL-CIO ("Local 15") bring this action against defendant Glassmar

1

Steel Erectors, Inc., pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq*. ("ERISA") and to the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185 *et seq*. ("LMRA").

Despite proper service of the summons and complaint, defendant has failed to plead or otherwise defend this action. Plaintiffs now move for a default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. The Honorable Pamela K. Chen referred plaintiffs' motion for a default judgment to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that plaintiffs' motion for a default judgment should be granted and judgment in the amount of $64,994.31 plus interest should be entered against defendant.

## BACKGROUND

Plaintiffs, the Local 15 Trust Funds, CPF, and NTF, are multi-employer/employee benefit plans under ERISA and the LMRA. Complaint, ECF No. 1 (hereinafter "Compl.") ¶¶ 8, 12, 16. On March 25, 1991 defendant entered into a collective bargaining agreement with Local 15 which is currently in effect and has not been voided by the parties. Compl. ¶¶ 23–25; Affidavit of Thomas Callahan, ECF No. 9 (hereinafter "Callahan Aff.") ¶ 4. Defendant agreed to be "bound to all of the terms and conditions" of the Collective Bargaining Agreement (hereinafter "CBA"). CBA, ECF No. 12–2 ¶ 1.

The CBA requires defendant to remit contributions to plaintiffs Local 15 Trust Funds, CPF, and NTF based upon each straight and overtime hour worked by employees covered by the CBA. Compl. ¶ 24. The CBA also requires defendant to remit employee allocated supplemental union dues and political action committee payments based upon each straight and overtime hour worked by employees covered by the CBA. Id. at ¶ 25.

Pursuant to the CBA and the applicable sections of the Trust Agreements, plaintiffs conducted an audit of defendant's books and records for the period of July 1, 2016 through June 30, 2019 ("Audit Period") to determine whether defendant had made the required payments. Compl. ¶ 27. The audit revealed that defendant had failed to provide fringe benefits (ERISA contributions) in the amount of $45,573.05, and supplemental union dues and political action committee payments (non-ERISA benefits) in the amount of $3,756.81, as required by the CBA. Auditor's report, ECF No. 12-10 at 2. Therefore, plaintiffs are owed a total of $49,329.86, plus interest. Id. Defendant has not paid any portion of the deficiency identified by the audit. Compl. ¶¶ 29, 30.

## PROCEDURAL HISTORY

Plaintiffs filed the instant action on August 17, 2020. ECF No. 1. Plaintiffs properly served the summons and complaint on defendant on September 1, 2020 by serving the Office of the Secretary of State of New York. ECF No. 5. Defendant failed to respond to the complaint. At plaintiffs' request, the Clerk of Court noted an entry of default against defendant on October 13, 2020. ECF No. 7. Plaintiffs now move for a Default Judgment. ECF No. 8; Memorandum of Law in Support of Plaintiffs' Motion for Default Judgment Against Defendant Glassmar Steel Erectors, Inc. (hereinafter "Memo"), ECF No. 13.

## DISCUSSION

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). A plaintiff may then move for a default judgment against a defendant. Fed. R. Civ. P. 55(b)(2). If a defendant

fails to appear or move to set aside the default under Rule 55(c), the Court may enter a default judgment on plaintiff's motion. Id.

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc., 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010) (citing Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993)). "Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013) (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (courts must "supervise default judgments with extreme care to avoid miscarriages of justice")).

On a motion for a default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997); see also Universal Elec. Corp., 970 F. Supp. 2d 108, 119 (E.D.N.Y. 2013). Regardless of the assumption of truth, the Court has a "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce plc v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). In other words, "[a]fter default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Id. (citation omitted). If the unchallenged facts establish defendant's liability, the Court then determines the amount of damages due. Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111).

In evaluating defendant's liability, the Court is limited to the four corners of the complaint. Rolls-Royce plc, 688 F. Supp. 2d at 153. The Court is not so restricted in determining damages, which may be calculated based on documentary evidence, affidavits, or evidence submitted at a hearing on damages. See Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111.

## I. Defendant's Liability under ERISA and the LMRA

The factual allegations in plaintiffs' complaint establish defendant's liability under ERISA and the LMRA. Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. "ERISA vests the Court with jurisdiction over civil actions brought by fiduciaries of employee benefit plans to enforce provisions of such plans." Trs. of the Local 7 Tile Indus. Welfare Fund v. City Tile, Inc., 10-CV-322 (SJ)(ALC), 2011 WL 917600, at *1 (E.D.N.Y. Feb. 18, 2011), adopted by, 2011 WL 864331 (E.D.N.Y. Mar. 10, 2011).

In the instant case, plaintiffs allege that defendant is an "employer," Compl. ¶ 22; that plaintiffs are "employee pension benefit plans," (CPF),[1] "employee welfare benefit plans," (Local 15 Trust Funds and NTF), and "multi-employer/employee benefit plans," (Local 15 Trust Funds, CPF, and NTF), id. ¶¶ 6–16; and that the named trustees are plan "fiduciaries" as defined by ERISA. Id. ¶¶ 5, 10, 14. Plaintiffs further allege that defendant was obligated to make contributions to the plaintiffs pursuant to the CBA, and that defendant failed to make the required contributions. Id. ¶¶ 23–31. These factual allegations are sufficient to establish defendant's liability under ERISA for the unpaid contributions. See Labarbera v. Frank J. Batchelder Transp.

---

[1] The Local 15 Pension Fund was merged into the CPF in 2000, but this is not reflected in the language of the agreements between Local 15 and the Building Contractors' Association, Inc. See Memo. at 3; Callahan Aff. at ¶ 6.

5

LLC, No. 08 CV 3387 (SJ)(JMA), 2009 WL 240521, at *3 (E.D.N.Y. Feb. 2, 2009) (finding liability based on allegations that defendant was a party to a CBA and failed to make required contributions).

Section 301(a) of the LMRA gives the Court jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce[.]" 29 U.S.C. § 185(a). Plaintiffs allege that Local 15 is a labor organization pursuant to the LMRA and that defendant was obligated to make supplemental union dues and political action committee payments contributions pursuant to the CBA. Compl. ¶¶ 17, 25, 30. Thus, Local 15's uncontested allegations are sufficient to establish liability under the LMRA as to the unpaid supplemental union dues and political action committee payments. See Finkel v. Allstar Elec. Corp., No. 11-CV-3222 (KAM)(RER), 2013 WL 4806951, at *4 (E.D.N.Y. Sept. 9, 2013) ("Plaintiff has established liability under Section 301 of the LMRA because it sufficiently pleads that [defendant] failed to remit the Required Contributions in accordance with their obligations under the CBAs."); cf. The Annuity, Pension, Welfare, Training and Labor Mgmt. Coop. Tr. Funds of the Int'l Union of Operating Eng'rs Local 14-14 B, AFL-CIO v. BKS-NY, LLC, No. 18 Civ. 0256 (LDH)(VMS), 2018 WL 4522103, at *4–5 (E.D.N.Y. Aug. 6, 2018) (recommending that the Court deny unpaid contributions to a political action committee as the CBA did not reference a political action committee payment obligation as to the specified plaintiff).

Plaintiffs' complaint sufficiently establishes defendant's liability under ERISA and the LMRA for the Audit Period, July 1, 2016 through June 30, 2019. Accordingly, it is respectfully recommended that the Court should grant plaintiffs' motion for a default judgment.

II.  **ERISA Damages**

A defendant's default amounts to admission of liability for all well pleaded factual

allegations in the complaint, except those relating to damages. Credit Lyonnais Sec. (USA), Inc., 183 F.3d at 155 ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true."); Greyhound Exhibitgroup, Inc. v. E.L.U.L Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) ("While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."). To determine the amount of damages, the district court "may conduct hearings or make referrals," Fed. R. Civ. P. 55(b)(2), but "[d]etailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing." Chanel, Inc. v. Louis, No. 06-CV-5924 (ARR)(JO), 2009 WL 4639674, at *4 (E.D.N.Y. Dec. 7, 2009) (citing Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991)). On a motion for a default judgment, plaintiffs have the burden to prove damages to the Court with a "reasonable certainty." Credit Lyonnais Secs. (USA), Inc., 183 F.3d at 155 (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111)).

Plaintiffs request $64,998.18 in damages. Memo at 17. In support of plaintiffs' application for damages, they submit the following:

1. Affidavit of Thomas Callahan, the president and business manager of Local 15 and a trustee of the Local 15 Trust Funds, ECF No. 9, ("Callahan Aff.");
2. Affidavit of Lisa Madeiras, payroll audit manager of the accounting firm Schultheis & Panettieri, LLP, retained by plaintiffs to conduct audits of contributing employers' payroll records, ECF No. 10, ("Madeiras Aff.");
3. Affidavit of Catherine Chase, the day-to-day administrator of the Local 15 Trust Funds, ECF No. 11, ("Chase Aff.");
4. Affidavit of James Michael Steinberg, plaintiffs' counsel, ECF No. 12, ("Steinberg Aff."), which attaches:
    - the summons and the complaint, ECF No. 12-1;
    - the CBA, ECF No. 12-2;
    - the Local 15/BCA Agreements for the relevant periods, 12-3, 12-4;
    - the Trust Agreements, ECF Nos. 12-5, 12-6, 12-7, 12-8, 12-9;
    - the auditor's report, ECF No. 12-10;
    - the wage scale schedules identifying the contribution rates, ECF No. 12-11;
    - an invoice for the payroll audit, ECF No. 12-12;

- o an invoice for service of process, ECF No. 12-13; and
- o plaintiffs' counsel's reconstructed time records, ECF No. 12-14.

Reviewed together, plaintiffs' submissions are sufficient for the Court to calculate damages for the Audit Period with reasonable certainty. No evidentiary hearing is needed.

### A. Unpaid Contributions

Pursuant to 29 U.S.C. § 1132(g)(2)(A), plaintiffs are entitled to recover unpaid contributions that defendant was required to make, but failed to pay, in accordance with the CBA. The auditors reviewed defendant's books and records for the Audit Period to determine whether defendant made the appropriate ERISA and non-ERISA contributions. Madeiras Aff. ¶¶ 1–2.

The auditor reviewed defendant's payroll records to determine the total number of regular and/or double-time hours worked by each Local 15 member employed by defendant during each of the periods within the Audit Period.[2] Id. ¶ 3. The total number of hours worked by each employee is reported in the "Audited Hours" column of the Audit Report. Id.

The auditor then reviewed the "stamp redemption reports" maintained by the Local 15 Trust Funds to determine the number of hours redeemed by employees. Id. ¶ 4. These hours are reported in the "Redeemed Hours" column in the audit report. Id. The "Redeemed Hours" were subtracted from the "Audited Hours" and the resulting calculation is reported in the "Difference" column of the Audit Report. Id.[3]

The auditor then multiplied the "Total Hours Due" by the applicable contribution rates which are identified on the Wage Schedules, ECF No. 12-11 at 2 (effective after July 1, 2016); 17

---

[2] The Court references the sub-periods within the Audit Report as follows:
  July 1, 2016 – June 30, 2017 = **Period 1**
  July 1, 2017 – December 31, 2017 = **Period 2**
  January 1, 2018 – June 30, 2018 = **Period 3**
  July 1, 2018 – June 30, 2019 = **Period 4**

[3] Because there was no credit for unredeemed hours reflected in the audit report, the audited hours reflects the hours owed.

(effective after July 1, 2017); 36 (effective after July 1, 2018), to calculate the total amount owed, or the "Principal." Madeiras Aff. ¶ 5.

The Audit Report shows defendant owes the following ERISA contributions for each period in the Audit Report:

|  | **Period 1** | **Period 2** | **Period 3** | **Period 4** | **TOTAL** |
|---:|---|---|---|---|---|
| **Welfare** | $1,488.00 | $1,824.00 | $3,743.25 | $4,012.80 | $11,068.05 |
| **Pension** | $1,201.20 | $1,672.40 | $3,200.50 | $3,226.40 | $9,300.50 |
| **Annuity** | $2,304.00 | $2,793.00 | $5,696.25 | $5,814.00 | $16,607.25 |
| **Apprentice** | $144.00 | $228.00 | $465.00 | $456.00 | $1,293.00 |
| **MRA** | $240.00 | $285.00 | $558.00 | $547.20 | $1,630.20 |
| **Vacation** | $768.00 | $969.00 | $1,976.25 | $1,938.00 | $5,651.25 |
| **NTF** | $0.00 | $0.00 | $0.00 | $22.80 | $22.80 |
| **TOTAL** | $6,145.20 | $7,771.40 | $15,639.25 | $16,017.20 | **$45,573.05** |

ECF No. 12-10. Having reviewed the Audit Report and finding it accurate, it is respectfully recommended that the Court should grant plaintiffs' motion and award plaintiffs $45,573.05 in unpaid ERISA contributions.

### B. ERISA Prejudgment Interest

Plaintiffs are entitled to prejudgment interest on the delinquent contributions. 29 U.S.C. § 1132(g)(2)(B). The ERISA provides that "[f]or purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26." 29 U.S.C. § 1132(g)(2)(E). The following interest rates are provided in the Trust Agreements: 6% for welfare, annuity, apprentice, MRA and vacation contributions, 9% for pension contributions, and 18% for NTF contributions. See ECF Nos. 12-5 at 22 (Annuity Fund); 12-6 at 31 (Welfare Fund); 12-7 at 18 (Apprenticeship/Training Fund); 12-

8 at 12 (Pension); 12-9, 23–24 (NTF).[4]  Plaintiffs used the following formula to calculate prejudgment interest:

> [number of days between end of Period and June 2, 2020[5]] **x** [applicable interest rate pursuant to the Trust Agreement] ÷ 365 **x** [principal due per Period]

Madeiras Aff. ¶ 6. Using this formula, the interest due on defendant's delinquent contributions is as follows:

|  |  | **Period 1** | **Period 2** | **Period 3** | **Period 4** |  |
|---|---|---|---|---|---|---|
|  | No. of days between the end of Period through 6/2/20 | 1068 | 884 | 703 | 338 |  |
|  | **Principal per Period** | **Interest due** | | | | **Total Interest Due** |
| **Welfare** | 1. $1,488.00<br>2. $1,824.00<br>3. $3,743.25<br>4. $4,012.80 | $261.24 | $265.05 | $432.58 | $222.96 | $1,181.83 |
| **Pension** | 1. $1201.20<br>2. $1,672.00<br>3. $3,200.50<br>4. $3,226.40 | $316.32 | $364.45 | $554.78 | $268.90 | $1,504.45 |
| **Annuity** | 1. $2,304.00<br>2. $2,793.00<br>3. $5,696.25<br>4. $5,814.00 | $404.49 | $405.86 | $658.29 | $323.04 | $1,791.68 |
| **Apprentice** | 1. $144.00<br>2. $228.00<br>3. $465.00<br>4. $456.00 | $25.28 | $33.13 | $53.74 | $25.34 | $137.49 |
| **MRA** | 1. $240.00<br>2. $285.00<br>3. $558.00 | $42.13 | $41.41 | $64.48 | $30.40 | $178.42 |

---

[4] The Trust Agreement for NTF states that interest shall be calculated at the rate of one-and-one-half percent (1 ½%) per month compounded from the due date through the date of payment which equals an annual rate of 18%. ECF 12-9 at 23–24; Steinberg Aff. At 10.

[5] For the purposes of the deficiency report, plaintiffs calculated interest owed through June 2, 2020. Plaintiffs will be entitled to prejudgment interest from June 3, 2020 through the date of judgment using the same formula.

| | | | | | | |
|---|---|---|---|---|---|---|
| Vacation | 4. $547.20<br>1. $768.00<br>2. $969.00<br>3. $1,976.25<br>4. $1,938.00 | $134.83 | $140.81 | $228.39 | $107.68 | $611.71 |
| NTF | 1. $0.00<br>2. $0.00<br>3. $0.00<br>4. $22.80 | $0.00 | $0.00 | $0.00 | $3.80 | $3.80 |
| Total Principal | $45,573.05 | | | | Total Interest | $5,409.38 |

It is respectfully recommended that the Court should award the Local 15 Trust Funds, CPF and NTF $5,405.56 in prejudgment interest on the principal sum of $45,573.05 calculated at the interest rates set forth in the Trust Agreements through June 2, 2020. Furthermore, it is recommended the Court should award the Local 15 Trust Funds and CPF an additional sum of interest on the principal sum of $45,573.05 to be calculated at the same rates for the period from June 3, 2020 through the date judgment is entered by the Court.

### C. Liquidated Damages

Plaintiffs are entitled to liquidated damages on the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C). ERISA permits the Court to award liquidated damages equal to the greater of either: (1) the interest on the unpaid contributions; or (2) the amount designated by the CBA (up to 20% of the delinquent contributions). 29 U.S.C. § 1132(g)(2)(C)(i)–(ii). For Local 15 Trust Funds, plaintiffs request $3,624.98 in liquidated damages on the principal sum of $36,249.75, which they calculated at a 10% rate in accordance with the applicable provisions of the Trust Agreements. See ECF Nos. 12-5 at 22 (Annuity Fund); 12-6 at 31 (Welfare Fund); and 12-7 at 18 (Apprenticeship/Training Fund). For CPF and NTF, plaintiffs request liquidated damages calculated at a 20% rate in accordance with the applicable provisions of the Trust Agreements. See ECF Nos. 12-8 at 12–13 (CPF); 12-9 at 37 (NTF). Accordingly, plaintiffs request $1,860.10 based

on the $9,300.50 contribution owed to CPF, and $4.56 based on the $22.80 contribution owed to NTF. Memo at 10–11.

Having reviewed the applicable provisions of the Trust Agreements, it is respectfully recommended that the Court should award a total of $5,489.64 in liquidated damages to the Local 15 Trust Funds, CPF and NTF.

### D. Attorney's Fees

Plaintiffs are entitled to reasonable attorney's fees as an award of reasonable attorney's fees is mandatory under ERISA upon a finding that a defendant is delinquent in payment of contributions. 29 U.S.C. § 1131(g)(2)(D); see also ECF Nos. 12-5 at 22 (Annuity Fund), 12-6 at 31 (Welfare Fund), 12-7 at 18 (Apprenticeship/Training Fund), 12-8 at 14–15 (CPF), 12-9 at 37 (NTF). Courts in this Circuit award attorney's fees to a prevailing party by calculating the "presumptively reasonable fee." Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 172 (2d Cir. 2009). The Court determines the presumptively reasonable fee by multiplying the number of hours the attorney spent on the litigation by "a reasonable hourly rate." Gesualdi v. Interstate Payroll Co., Inc., 2:14-cv-06780 (ADS)(SIL), 2019 WL 109379, at *7 (E.D.N.Y. Jan. 4, 2019) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). A reasonable rate is "the rate a paying client would be willing to pay," based on the "prevailing [hourly rate] in the community . . . where the district court sits." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany and Albany Cty. Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2008); see also Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984) ("[T]he requested rates [must be] in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."). After the reasonable hourly rate is determined, the Court multiplies that rate by the reasonable number of hours the attorney expended, to determine a presumptively reasonable fee.

12

The party seeking fees bears the burden of establishing that the number of hours for which it seeks compensation is reasonable. Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994) (citing Hensley, 461 U.S. at 437). A request for attorney's fees must be "supported by contemporaneous time records that show, 'for each attorney, the date, the hours expended, and the nature of the work done.'" Bd. of Trs. of Pointers, Cleaners & Caulkers Welfare Fund, Pension Fund and Annuity Fund v. Super Eagle Contracting Inc., No. 12-CV-0399 (KAM)(RER), 2013 WL 802034 at *4 (E.D.N.Y. Jan. 16, 2013), adopted by, 2013 WL 802847 (E.D.N.Y. Mar. 5, 2013) (quoting New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983)).

The reasonable hourly rate for partners in this District ranges from $300 to $450. See, e.g., Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. D & A Bus Co., Inc., 270 F. Supp. 3d 593, 618 (E.D.N.Y. 2017) (finding that "prevailing rates for experienced attorneys in the Eastern District of New York range from approximately $300 to $400 an hour . . . and some courts "have recognized slightly higher ranges in this district of $300–$450 per hour for partners[.]" (collecting cases)).

Plaintiffs request an award of $3,217.50 in attorney's fees for 8.25 attorney hours expended at an hourly rate of $390.00. Memo at 11–13; see also ECF No. 12. Plaintiffs' counsel submits "reconstructed time records" based on his original, contemporaneous time sheets to support the attorney's fee request. ECF No. 12-14. The Annuity, Pension, Welfare and Training Funds of the Int'l Union of Operating Eng'rs, Local 14-14B AFL-CIO v. Superior Site Work, No. 15-CV-543 (MKB), 2017 WL 639248, at *7 n.13 (E.D.N.Y. Feb. 16, 2017) ("[C]ourts recognize that attorney affidavits which set forth all charges with the required specificity but which are reconstructions of the contemporaneous [time] records . . . suffice to permit recovery of attorneys' fees[.]") (internal

quotation marks and citation omitted). Mr. Steinberg is a partner of the law firm Brady McGuire & Steinberg, P.C., and has been practicing law for more than 24 years. Steinberg Aff. ¶¶ 1, 14. Plaintiffs' counsel's hourly rate is in line with awards in this District to counsel with comparable experience. See Finkel v. Athena Light & Power LLC, No. 14 Civ. 3585 (DLI) (PK), 2016 WL 4742279, at *11 (E.D.N.Y. Sept. 11, 2016) (awarding an hourly rate of $390.00 to a partner in an ERISA default judgment case); Gesualdi v. MBM Inds., Inc., No. CV-10-2607 (BMC), 2010 WL 3724348, at *2 (E.D.N.Y. Sept. 15, 2010) (same). Furthermore, the 7.5 hours Mr. Steinberg spent on this litigation falls well within the range considered reasonable in this district. Gesualdi v. Interstate Masonry Corp., No. 12-CV-0383 (NGG)(VMS), 2014 WL 1311709, at *13 (E.D.N.Y. Mar. 28, 2014) (finding 23.8 hours spent on an ERISA default reasonable and collecting cases in which reasonable hours expended range from 14 to 28 hours). Let me also add that unlike many ERISA default motions, Mr. Steinberg's motion papers are a pleasure to review as they are comprehensive and accurate. Accordingly, it is respectfully recommended that the Court should award plaintiffs $3,217.50 in attorney's fees.

### E. Audit Fees

Plaintiffs request an award of $1,036.75 in audit fees incurred as a result of the field audit conducted on defendant's payroll records. Memo. 13. Courts may award "such other legal or equitable relief as the Court deems appropriate," 29 U.S.C. § 1132(g)(2)(E), and regularly award reasonable audit costs. See, e.g., Gesualdi v. Andrews Trucking Corp., No. 09 CV 565 (SLT)(RML), 2010 WL 2292218, at *7 (E.D.N.Y. May 14, 2010), adopted by 2010 WL 2292392 (awarding $13,382.50 in audit fees).

"[R]equests for audit fees must be supported by records . . . sufficient to allow the court to determine the reasonableness of audit costs." Trs. of Steamfitters' Local Union No. 638 v. Nexus

Mech., Inc., No. 08-CV-3214 (RRM)(MDG), 2014 WL 1338377, at *8 (E.D.N.Y. Apr. 2, 2014) (internal quotation marks and citations omitted). "The evidence in support of recovering audit fees must include, at a minimum, some breakdown of the auditors' rates charged and hours expended." Gesualdi v. Diversified Carting, Inc., No. 10-2561(SIL), 2014 WL 5475357, at *3 (E.D.N.Y. Oct. 29, 2014) (internal quotation marks and citation omitted).

Here, plaintiffs submit a report identifying the hours and rates charged to conduct the audit, which the payroll audit manager swears is accurate. Steinberg Aff. Ex. K, ECF No. 12-12; Madieras Aff. ¶ 8. The report shows 6.5 staff hours expended at a rate of $94.00/hour and 3.25 manager/supervisor hours expended at a rate of $131.00/hour for a total of $1,036.75. Steinberg Aff. Ex. K. Therefore, plaintiffs should be awarded $1,036.75 in audit fees.

### F. Costs

"In a successful action under ERISA to recover delinquent contributions, courts award '[r]easonable and identifiable out-of-pocket disbursements ordinarily charged to clients.'" Trs. of Plumbers Local Union No. 1 v. Temperini Mech., Inc., No. 12 Civ. 05646 (ILG)(SMG), 2014 WL 4678025, at *4 (E.D.N.Y. Sept. 19, 2014) *(*quoting Trs. of the Road Carriers Local 707 Welfare Fund v. Goldberg, No. 08-CV-0884 (RRM)(MGD), 2009 WL 3497493, at *10 (E.D.N.Y. Oct. 28, 2009)).

Plaintiffs request $515.00 in costs and disbursements, comprised of $400.00 for the filing fee and $115.00 for the process server. 29 U.S.C. § 1132(g)(2)(D); Memo. at 14. Plaintiffs submit an invoice for the process server's costs. Steinberg Aff. Ex. L, ECF No. 12-13. Although plaintiffs did not submit a receipt for the filing fee, the Court takes judicial notice of the $400.00 filing fee. See BKS-NY, LLC, 2018 WL 4522103, at *12 (E.D.N.Y. Aug. 6, 2018) (taking judicial notice of

the $400.00 filing fee). Accordingly, it is respectfully recommended that the Court should award plaintiffs $515.00 in costs.

### III. Non-ERISA Damages

Plaintiffs seek $3,756.81 in non-ERISA contributions, owed to Local 15 for supplemental union dues and political action committee payments pursuant to the terms of the CBA. Memo. at 15–16; Callahan Aff. ¶ 8; Chase Aff. ¶ 7. As discussed, plaintiffs have sufficiently pled their claim for LMRA damages. According to the Audit Report, defendant failed to remit the following amounts:

|  | **Period 1** | **Period 2** | **Period 3** | **Period 4** | **TOTAL** |
|---|---|---|---|---|---|
| **PAC** | $9.60 | $11.40 | $23.25 | $22.80 | $47.05 |
| **Supp. Dues** | $491.52 | $620.16 | $1,264.80 | $1,313.28 | $3,689.76 |
| **TOTAL** | $501.12 | $631.56 | $1,288.05 | $1,336.08 | **$3,756.81** |

ECF No. 12-10. Having reviewed the relevant Trust Agreements and the Audit Report and finding that the requested amount is accurate, it is respectfully recommended that the Court should award $3,756.81 in LMRA damages to Local 15.

#### A. Non-ERISA Prejudgment Interest

Plaintiffs seek prejudgment interest on the delinquent non-ERISA contributions. Because the CBA does not provide a rate of interest for delinquent non-ERISA contributions, plaintiffs request that the Court apply a 9% annual interest rate derived from New York C.P.L.R. § 5004, calculated using the "single reasonable intermediate date" of January 1, 2018. Memo at 16. Courts in this district have applied the § 5004 rate to calculate interest on non-ERISA delinquencies. Superior Site Work, 2017 WL 639248, at *8–9 (collecting cases). I therefore recommend awarding interest at the New York State statutory annual rate of 9%. See Nexus Mechanical, Inc., 2014 WL

1338377, at *6 (E.D.N.Y. Apr. 2, 2014) (awarding interest for non-ERISA damages at the statutory rate under New York law where CBA did not provide for the interest rate) (citing cases).

Where damages "were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b); see BKS-NY, LLC, 2018 WL 4522103, at *13 (applying the "single reasonable intermediate date."). Accordingly, courts calculating damages in ERISA cases "routinely calculate prejudgment interest from a midpoint date in the delinquency period." Superior Site Work, 2017 WL 639248, at *9.

Here, the daily prejudgment interest rate on the unpaid non-ERISA contributions, calculated at a rate of 9% per year is $0.93.[6] The intermediate date of the delinquency period— July 1, 2016 through June 30, 2019— is January 1, 2018. Accordingly, it is respectfully recommended that the Court should calculate the interest award to Local 15 by multiplying the daily prejudgment interest rate, $0.93, by the number of days between January 1, 2018 and the date the Court enters judgment.

## CONCLUSION

For the reasons set forth above, it is respectfully recommended that plaintiffs' motion for a default judgment should be granted; judgment should be entered against defendant in the amount of **$64,998.11** granting plaintiffs the following awards plus interest:

| Plaintiff Local 15 Trust Funds, CPF, and NTF | Plaintiff Local 15 |
|---|---|
| $45,573.05 in unpaid ERISA contributions<br><br>$5,409.38 in interest on unpaid ERISA contributions (through June 2, 2020)<br><br>$5,489.64 in liquidated damages | $3,756.81 in unpaid union dues and PAC contributions |

---

[6] $3,756.81 x .09/365 = $0.93

| | |
|---|---|
| $3,217.50 in attorney's fees<br><br>$1,036.75 in audit fees<br><br>$515.00 in costs | |
| Total: **$61,237.50** + additional prejudgment interest from June 3, 2020 through the date the Court enters judgment. See Section II. B. | Total: **$3,756.81**, + additional prejudgment interest of $0.93 per day between January 1, 2018 through the date the Court enters judgment. See Section III. A. |

Plaintiffs are hereby ordered to serve a copy of this Report upon defendant at its last known address and to file proof of service with the Court forthwith.

### FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989).

SO ORDERED.

                                                                                 /S/
                                                        LOIS BLOOM
                                                        United States Magistrate Judge

Dated: August 5, 2021
      Brooklyn, New York